# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Crim. No. 10-237 (DSD/BRT) |
| Plaintiff, | |
| v. | |
| Kerry Jon Quam, | |
| Defendant, | **REPORT AND RECOMMENDATION** |
| and | |
| TD Ameritrade, | |
| Garnishee. | |

Charles J. Kovats, Jr., Esq., and John R. Marti, Esq., United States Attorney's Office, counsel for Plaintiff.

Daniel J. Cragg, Esq., Eckland & Blando, LLP, counsel for Defendant.

BECKY R. THORSON, United States Magistrate Judge.

This matter is before the Court for a ruling on Defendant Kerry Jon Quam's Objection to a Post-Judgment Writ of Garnishment ("the Writ"). The Government seeks an order requiring the garnishee TD Ameritrade to pay the garnished funds to the United States to be used for victim restitution. Quam concedes that he is responsible—jointly and severally—for more than $3,000,000 in victim restitution; however, he claims he is only required to pay $100 per month under the payment plan set forth in this Court's Judgment in a Criminal Case ("the Judgment"). This Court disagrees that the payment

plan bars the Government from pursuing other collection efforts—including garnishment. For the reasons detailed below, this Court respectfully recommends that Quam's objections be overruled and that the Writ be enforced as issued.

## BACKGROUND

Defendant Kerry Jon Quam pleaded guilty to conspiracy to commit mail fraud in violation of 18 U.S.C. § 371. (Doc. No. 26, Judgment 1.) On September 7, 2011, he was sentenced to three years of supervised release and ordered to pay $3,283,680.95 in restitution to the victims of his crime under the Mandatory Victim Restitution Act ("MVRA"). (*Id.* at 2–4.) The Criminal Monetary Penalties section of the Judgment specifies restitution of $2,874,035.14 to Sun Trust Mortgage, Inc., and $409,645.81 to Regions Mortgage. (*Id*. at 4.) The restitution obligation of Defendant Quam and his Co-Defendants is joint and several. (*Id*. at 5.) The Schedule of Payments section of the Judgment states that the "[l]ump sum payment of $3,283,680.95" was "due immediately" in accordance with special instructions. (*Id.*) The special instructions provide that "[D]efendant shall make payments of at least $100 a month beginning 30 days from the date of the judgment." (*Id*.)

On September 29, 2011, the United States sent Quam a "Notice of Intent to Offset" that indicated the full restitution amount owed ($3,283,680.95) and stated, "We strongly urge you to pay this debt immediately." (Doc. No. 42, Decl. of Kerry Quam ("Quam Decl.") ¶ 9, Ex. B.) Following that, the United States regularly sent Quam invoices on the final day of every month, requesting that $100 be paid on the fifteenth day of the following month. (*Id*. ¶ 6; *see, e.g.*, *id.* at Ex. A.) Quam has complied with

those terms. (*Id.* ¶ 6; *see* Doc. No. 39, Decl. of Brandon M. Berger ("Berger Decl.") ¶ 4, Ex. B.) He made the required monthly payments, occasionally late, but never failed to remit any given payment within thirty days of when it became due. (Quam Decl. ¶ 6; *see* Berger Decl. ¶ 4, Ex. B.)

Quam's three-year period of supervised release expired in September 2014. (*See* Judgment 2.) As of April 2015, he had only paid $4,500.00 towards his $3,283,680.95 restitution obligation. (Berger Decl. ¶ 4, Ex. B.) On March 18, 2015, the United States submitted an Application for Writ of Garnishment. (Doc No. 30.) The Government sought to garnish Quam's three TD Ameritrade retirement accounts pursuant to 28 U.S.C. § 3205(b)(1) on grounds that "more than 30 days ha[d] elapsed since demand for payment was last made" and Quam "ha[d] failed to satisfy the debt as set forth in the demand." (*Id.* at 1.) This Court issued a Writ of Garnishment to TD Ameritrade on March 23, 2015, and TD Ameritrade disclosed that $31,459.32 was available, primarily from two IRA accounts. (*Id.*; Doc. No. 31, Answer 2.)

The Clerk of Court notified Quam of his right to a hearing to challenge garnishment and Quam promptly requested a court hearing. (Doc. No. 33 at 3.) This Court then ordered briefing and held a hearing on May 13, 2015. (Doc. Nos. 34, 44.) Quam objects to the Writ on the ground that he does not owe more than $100 a month as set forth in the Court's Judgment. (*See* Doc. No. 33 at 3; Doc. No. 40, Def.'s Mem. of Law in Supp. of Objections to Writ of Garnishment ("Def.'s Mem.") 1–2, 6–12.)

## JURISDICTION OF MAGISTRATE JUDGE

In his Memorandum of Law in Support of Objections to Writ of Garnishment, Defendant Quam questions whether objections to a garnishment writ issued under the Federal Debt Collection Procedures Act ("FDCPA") are within a magistrate judge's "hear and determine" or "report and recommend" jurisdiction, citing to *United States v. Lawrence*, 538 F. Supp. 2d 1188 (D.S.D. 2008). (Def.'s Mem. 5.) The undersigned concludes—as the magistrate judge did in *Lawrence*—that the appropriate course is to issue a Report and Recommendation consistent with 28 U.S.C. § 636(b)(1). *See Lawrence*, 538 F. Supp. 2d at 1191–92 ("[T]he safer and more appropriate course of action . . . is to simply issue a report and recommendation.").

## DISCUSSION

Restitution under the MVRA is required when a defendant, like Quam, is convicted of "an offense against property . . . including any offense committed by fraud or deceit." 18 U.S.C. § 3663A(c)(1)(A)(ii). The MVRA prescribes that when identifiable victims suffer a pecuniary loss, courts "shall order . . . that the defendant make restitution to the victim of the offense." *Id.* § 3663A(a)(1). This serves the dual purpose of ensuring "that criminals pay full restitution to their victims for all damages caused as a result of the crime" and providing "those who suffer the consequences of crime with some means of recouping the personal and financial losses." *H.R. Rep. No.* 104-16, at 4–5 (1995); *see also United States v. Perry*, 360 F.3d 519, 530 (6th Cir. 2004); *United States v. Newsome*, 322 F.3d 328, 341 (4th Cir. 2003).

The MVRA, pursuant to § 3664(m)(1)(A)(i)-(ii), authorizes the Government to enforce victim restitution orders in the same manner that it recovers fines and "by all other available and reasonable means." *See, e.g.*, *United States v. Clayton*, 646 F. Supp. 2d 827, 833 (E.D. La. 2009), *aff'd*, 613 F.3d 592 (5th Cir. 2010); *United States v. Miller*, 588 F. Supp. 2d 789, 796 (W.D. Mich. 2008). The methods of restitution collection include the procedures for the enforcement of a civil judgment under federal or state law, most notably under the FDCPA. *United States v. Ekong*, 518 F.3d 285, 286 (5th Cir. 2007); *see* 28 U.S.C. §§ 3001, *et seq*. The FDCPA expressly provides that the Government may enforce its judgments against all nonexempt property of a defendant. 18 U.S.C. § 3613(a)(1). And § 3613(f) makes clear that the FDCPA applies to orders of restitution. 18 U.S.C. § 3613(f) ("In accordance with section 3664(m)(1)(A) of this title, all provisions of this section are available to the United States for the enforcement of an order of restitution."). Further, the Government may petition the Court for a writ of garnishment "against property . . . in which the debtor has a substantial nonexempt interest." 28 U.S.C. § 3205(a)-(b)(1).

Quam argues that he is only required to pay $100 per month towards his $3,283,680.95 restitution order. This Court disagrees. The $100 per month payment plan set forth in the Judgment does not bar further collection efforts by the Government – including garnishment. *See* 18 U.S.C. § 3613; *see also Ekong*, 518 F.3d at 286 (garnishing pension benefits notwithstanding installment payment plan); *United States v. Tisdale*, No. 3:12-CV-2520-L, 2013 WL 4804286, at *2 (N.D. Tex. Sept. 9, 2013) (finding payment schedule did not foreclose garnishment of defendant's checking and

savings accounts); *United States v. Schwartz*, No. 1:09-cr-67, 2011 WL 1544624, at *5 (S.D. Ohio Jan. 14, 2011) (stating that "the UNICOR payment schedule does not prohibit garnishment during Schwartz's incarceration"), report and recommendation adopted, 2011 WL 1526929 (S.D. Ohio Apr. 21, 2011), *aff'd*, 503 F. App'x 443 (6th Cir. 2012); *Miller*, 588 F. Supp. 2d at 796 ("[T]he periodic payment provision in a criminal judgment cannot be immutable or insulate a defendant from other collection efforts."); *United States v. James*, 312 F. Supp. 2d 802, 806 (E.D. Va. 2004) (noting existence of payment schedule does not preclude the Government "from pursuing other avenues of ensuring that defendant's restitution obligation is satisfied").

Regardless of the payment plan in progress, the Government may seek victim restitution through additional available avenues. *Lawrence*, 538 F. Supp. 2d at 1193. As the court observed in *Lawrence*:

> Had Congress intended for the Government to be bound by and limited to the installment payments set by a court, even after the court's supervision and criminal jurisdiction expired, there would be no need for the Government to have these collection methods at its disposal for use to enforce criminal debts.

*Id.* For example, in *United States v. Ekong*, the defendant's pension was garnished despite the criminal judgment specifying that restitution be paid in installments. 518 F.3d at 286. The *Ekong* court reasoned:

> The Mandatory Victim Restitution Act (MVRA) provides the Government authority to enforce victim restitution orders in the same manner that it recovers fines and by all other available means and, under 18 U.S.C. § 3613(a), it may collect restitution in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law, including the Federal Debt Collection Procedures Act of 1990.

518 F.3d at 286 (internal brackets and quotations omitted). The installment schedule in *Ekong* did not preclude the Government from "aggressively" enforcing a victim restitution order. *Id.* This Court concludes that the analysis in *Ekong* applies here – the Government may enforce the restitution still owed by Quam to the victims in this case.

The language of this Court's Judgment does not prohibit the Government from otherwise enforcing victim restitution through the proposed garnishment process. The Judgment provides for a "[l]ump sum payment of $3,283,680.95 due immediately" with "payments of at least $100 per month." (*See* Judgment 5); *see also Lawrence*, 538 F. Supp. 2d at 1192 (holding the Government was within its rights to garnish wages where there was a minimum monthly payment schedule and restitution was due "in full immediately"). Moreover, the Court's restitution order does not "specifically indicate that the payment schedule is the sole means of collecting the restitution amount." *Clayton*, 646 F. Supp. 2d at 836. Simply put, the payment schedule of "at least" $100 a month is not exhaustive, but rather a bare minimum. (*See* Judgment 5.) In other words, restitution payment plans set a floor, contemplating an expansion of payment means rather than stagnation. *See United States v. Kinlock*, 174 F.3d 297, 300 (2d Cir. 1999) (discussing defendant's "continuing obligation to pay restitution as funds become available").

In this case, Quam jointly and severally owes his victims more than $3,000,000, and the payment plan results in only nominal periodic payments. *See* 18 U.S.C. § 3664(f)(3)(B); (Berger Decl. ¶ 4, Ex. B). For example, if Quam pays $1,200 per year for twenty years under the payment schedule, that will yield only $24,000 towards the $3,283,680.95 restitution, a mere 0.73% of Quam's obligation. Quam's liability to pay

such a fine could terminate after twenty years, potentially limiting the Government's ability to collect. *See* 18 U.S.C. § 3613(b). This statutory limitation "necessitates that some amount of flexibility remain in the hands of the restitution collectors to ensure fulfillment of the debt collection." *United States v. Picklesimer*, No. 3:00cr0008, 2010 WL 2572850, at *2 (W.D.N.C. June 24, 2010). As it stands, even if Quam's retirement accounts are liquidated, he will still have paid only a minimal fraction of his victim restitution obligations.[1] The result Quam seeks—to confine his restitution obligations to the payment schedule alone—would "be contrary . . . to the fundamental purposes of the MVRA," which is designed to "force offenders to pay *full* restitution." *United States v. Bedonie*, 317 F. Supp. 2d 1285, 1330 (D. Utah 2004) (emphasis added); *see also* 18 U.S.C. § 3771(a)(6) (indicating crime victims have a "right to *full* and timely restitution") (emphasis added). This Court declines to take such an approach, which would "significantly hamper crime victims." *Bedonie*, 317 F. Supp. 2d at 1330.

Finally, the Government's enforcement proceedings do not render the payment schedule set by the Court irrelevant. The payment schedule operates as an in personam judgment against a defendant—such that failure to comply may result in default, revocation of supervised release, or contempt—while the Government's post-judgment enforcement options, such as garnishment, operate in rem against a defendant's property. *Lawrence*, 538 F. Supp. 2d at 1193. Accordingly, garnishment of Quam's retirement funds does not interrupt Quam's monthly obligations pursuant to the payment plan. *See*

---

[1] $55,459.32 ($24,000 from twenty years of monthly payments plus $31,459.32 from his retirement accounts) constitutes only 1.7% of the total restitution owed.

*United States v. Robles*, No. 06-20286-CR, 2014 WL 129285, at *1 (S.D. Fla. Jan. 14, 2014) ("[T]he statutory scheme and interpreting case law governing restitution payments permit the Government to collect the instant [restitution] without affecting [defendant's] scheduled payments.").

Thus, the payment plan, with which Quam is compliant, does not impede the Government's collection efforts via alternate sources, such as garnishment of Quam's retirement accounts, nor does garnishment interfere with the court-ordered payment plan.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Quam's objections to the Writ of Garnishment (Doc. Nos. 33, 40) be **OVERRULED**; and

2. The Writ of Garnishment (Doc. No. 30) be **ENFORCED**.

Date: July 21, 2015

*s/ Becky R. Thorson*
BECKY R. THORSON
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those

objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in D. Minn. LR 72.2(c).

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within **ten days** of receipt of the Report.